UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re Ruidoso Vending, Inc.,   Case No. 08-10021-j7

    Debtor.

---

Brenda Kasuboski,

    Plaintiff,

    v.   Adversary No. 11-1166-j

Mark Mulholland, et al.,

    Defendants.

---

## MEMORANDUM OPINION

This matter came before the Court on July 12, 2012 for a trial on the merits on the Complaint to Recover Money or Property and For Other Equitable Relief filed by Brenda Kasuboski ("Kasuboski" or "Plaintiff") against Mark Mulholland and Ruidoso Vending, Inc. ("Mulholland" and "RVI", individually, and "Defendants", collectively). Richard Hawthorne appeared for the Plaintiff. Charles Hawthorne appeared for the Defendants.

Ms. Kasuboski complains that, although she purchased from the Chapter 7 Trustee all of the assets of RVI, a corporation owned by Mr. Mulholland that was then a chapter 7 debtor, Mr. Mulholland wrongfully continues to maintain custody and control of those assets. Mr. Mulholland defends by asserting that he tendered all of the assets of RVI to Ms. Kasuboski, positing that she has simply refused to take possession. The issue before the Court is whether certain vending machines were property of the RVI bankruptcy estate or were owned by Mr. Mulholland individually, at the time Ms. Kasuboski purchased the assets of the bankruptcy

1

estate. To the extent the vending machines were assets of the estate, Ms. Kasuboski purchased them.

After considering the evidence, arguments of counsel, and applicable statutory and case law, the Court has determined that the Plaintiff largely did not carry her burden of proving that the assets in question were property of the RVI bankruptcy estate at the time of her purchase of the estate's assets. The Court will deny Plaintiff's request to recover assets in part, and grant it in part.

**Jurisdiction and Venue**

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b). The parties stipulated that this is a core proceeding under 28 U.S.C. § 157(b)(2)(J), and consented to the bankruptcy court hearing and determining, and entering final orders and judgments, on all claims, including issuance of final money judgments. *See* Pretrial Order, Docket No. 8, ¶ 1. Venue is proper under 28 U.S.C § 1409(a). Pursuant to Rule 52, Fed.R.Civ.P., made applicable by Rule 7052, Fed.R.Bankr.P., the Court now states its findings of fact and conclusions of law.

**FINDINGS OF FACT**

This is the latest episode in a protracted quarrel over vending machines. The immediate dispute is at least the fifth formal legal proceeding between Mr. Mulholland and Ms. Kasuboski, or parties controlled by them, during the last ten years.

### *The Chapter 7 Trustee's Sale of Ruidoso Vending, Inc.'s Assets*

On January 4, 2008, RVI filed a case under Chapter 7 in this District (the "RVI Chapter 7 Case"). *See* Case No. 08-10021-j7. Attorney Clarke Coll was appointed Chapter 7 Trustee ("Chapter 7 Trustee" or "Trustee").

The Court entered an order in the RVI Chapter 7 Case authorizing the Trustee to sell the property of the estate by auction to the highest bidder without any warranties of title or other warranties. *See* Case No. 08-10021-j7, Docket Nos. 24, 26, 28, 32. The Chapter 7 Trustee conducted the auction on June 15, 2010 and sold the assets of RVI that were then property of the estate to Ms. Kasuboski for $10,000.00. Ms. Kasuboski commenced this adversary proceeding in the RVI Chapter 7 Case to obtain possession of what she alleges were assets of RVI that she purchased from the Trustee.

Trial Exhibit 1 is a letter from the Defendants' attorney to the Plaintiff's attorney that allegedly lists the locations of all of the assets of the RVI bankruptcy estate that the Plaintiff purchased.[1] On Exhibit 1, the vending machines are split into two lists: Mr. Mulholland prepared a list of machines that he acquired when he purchased the assets of a business known as Bishop Tom's in 1998 (the "Bishop Tom's Vending Machines") and a separate list of machines that RVI purchased later (the "Later Purchased Machines"). The Bishop Tom's Vending Machines and the Later Purchased Machines, to the extent then still in Mr. Mulholland's or RVI's possession, custody, or control, became property of the RVI bankruptcy estate upon commencement of the bankruptcy case.

Almost all of the Bishop Tom's Vending Machines and Later Purchased Machines, which remain, are stored in a pasture located near Mr. Mulholland's personal residence, are rusted, are no longer operable, and over the years have been cannibalized for parts. Of the six purportedly operable Bishop Tom's Vending Machines for which Mr. Mulholland listed locations other than the pasture near his residence, Ms. Kasuboski testified that she was able to

---

[1] The letter purportedly accounts for almost all of the assets that the Chapter 7 Trustee specifically listed for sale in his Motion For Approval to Sell Property of the Estate to Highest Bidder at Auction. Ruidoso Vending, Inc., Chapter 7 Case, Docket No. 24. There were also two older vehicles listed in that motion, but neither party presented any evidence regarding such vehicles, so the Court does not concern itself with any determinations about them today.

-3-

locate only one in operation, which is at the Sierra Vista Primary School. *See, also*, Trial Exhibit 13. Ms. Kasuboski found at least two others at the locations described as "McGary" and the "police station," but testified that they had not been serviced for a long time. Ms. Kasuboski testified that she was unable to find any of the machines included on the list of Bishop Tom's Vending Machines located at the White Mountain Elementary and Intermediate Schools, and that such schools were no longer in operation. This is testimony is in direct conflict with her Trial Exhibit 3, which Ms. Kasbowski prepared, listing vending machines she located. That list shows these same two machines as being at the White Mountain Elementary and Intermediate Schools. Moreover, the list indicated that Ms. Kasuboski has pictures of these machines. *See* Trial Exhibit 3. The Court thus finds that Ms. Kasuboski was actually able to locate at least five of the six Bishop Tom's Vending Machines for which Mr. Mullholland provided a specific location other than the pasture near his residence.

Mr. Mulholland listed seven of the twenty-six Later Purchased Machines as "not available due to theft, destruction, or vandalism." Of the nineteen remaining Later Purchased Machines, for which Mr. Mulholland listed business locations, Ms. Kasuboski was unable to find any of them. The listed business location was no longer there, no machine was present, or the listed machines were replaced with machines that Mr. Mulholland claims as personal assets. Mr. Mulholland's testimony corroborated this accounting. The Court finds that testimony to be credible. Although the letter sent to Ms. Kasuboski (Trial Exhibit 1) was dated 2011, Mr. Mulholland prepared the information contained within it in 2004, making the list approximately seven years out of date. In those intervening years, all of the Later Purchased Machines either went missing or are now located in the pasture near Mr. Mulholland's residence.

-4-

### *Turnover of the Bishop Tom's Vending Machines*

After the auction sale at which Ms. Kasuboski presented the winning bid, Mr. Mulholland tendered three keys to vending machines to Ms. Kasuboski. However, Ms. Kasuboski was unable to fully open any of the machines listed on Trial Exhibit 1 using those keys. In addition to the tendering the keys, Mr. Mulholland's attorney sent Ms. Kasuboski's attorney a letter a few days after the auction, offering to set up an appointment at Mr. Mulholland's residence so she could take possession of the vending machines located in the pasture. Ms. Kasuboski never made such an appointment, though she has driven by the property many times. She did not make the appointment because of her belief, which is supported by the evidence, that all of the vending machines located in the pasture near Mr. Mulholland's residence are worthless junk. She does not wish to take possession of those vending machines.

### *The Disputed Vending Machines*

Trial Exhibit 3 contains a list of 32 gumball machines, 6 cigarette machines, 67 drink machines and 42 snack machines. All or a substantial portion of those machines are in operable condition and are being used by Mr. Mulholland in a vending machine business. The vending machines listed on Exhibit 3 that Mr. Mulholland is operating, other than the drink machines, which are leased, hereafter are called the "Disputed Vending Machines."

Of the Disputed Vending Machines that are snack machines, Trial Exhibit 3 indicates that thirty-one are new, *i.e.* purchased recently. Of the other eleven snack machines, five are Bishop Tom's Vending Machines accounted for in Mr. Mulholland's attorney's letter to Ms. Kasuboski attorney.

The parties now dispute whether the Disputed Vending Machines were part of the assets of the RVI bankruptcy estate that Ms. Kasuboski purchased at the auction or belong to Mr.

Mulholland individually. Before specifically addressing this issue the Court will consider events leading up to the auction.

### *Mulholland's Vending Machine Businesses and the Claim of Ray Bishop*

Mr. Mulholland entered the vending business as a sole proprietor with the purchase of several cigarette vending machines in or around 1981. In or around 1986, Mr. Mulholland formed RVI, and scaled up his vending machine operations. Although monies were frequently comingled between RVI and the personal accounts of Mr. Mulholland, the cigarette machines were never formally transferred by Mr. Mulholland to RVI. Over the years, RVI also accumulated dozens of Coca-Cola drink machines leased from The Coca-Cola Company. It was The Coca-Cola Company's practice to lease drink machines without charge so long as the operator stocked the machines with Coca-Cola products. In 2004, Mr. Mulholland purchased gumball machines from his son using funds in his personal checking account.

In 1998, RVI acquired the Bishop Tom's Vending Machines from Ms. Kasuboski's parents, Ray and Patricia Bishop, in connection with RVI's purchase of the assets of a business known as Bishop Tom's. The purchase price was approximately $145,000, with a portion of the purchase price payable at closing and the balance over a period of years.[2] Whatever the exact terms of the purchase, Mr. Mulholland complied with them for approximately five years after the contract's formation, and then defaulted. Ray Bishop passed away in the early 2000s. His wife is incapacitated.

Ms. Kasuboski, as personal representative of the Estate of Ray Bishop, has pursued legal remedies against Mr. Mulholland and RVI for breach of the 1998 purchase and sale agreement

---

[2] Neither evidence of amounts paid nor of the specific payment terms was proffered into evidence. The Court makes no findings regarding the exact terms of the original contract. The terms of the contract are not at issue in this adversary proceeding.

-6-

and on other legal theories. In late 2004 or early 2005,[3] the Estate of Ray Bishop obtained a judgment in its favor from the New Mexico state court against RVI, for damages resulting from RVI's default under the purchase and sale contract.

### *The Sole Proprietorship, Alter Ego Judgment, Purchase of the Disputed Vending Machines, and the RVI Bankruptcy Cases*

In 2005, in response to the judgment that the Estate of Ray Bishop obtained against RVI, Mr. Mulholland began operating a vending machine business as a sole proprietorship, doing business under the name Ruidoso Vending (the "Ruidoso Vending Proprietorship"). He substantially reduced the ongoing operations of RVI and ceased purchasing new machines for RVI, leaving in that corporation only the aging machines, including the Bishop Tom's Vending Machines.[4] After Mr. Mulholland began operating the Ruidoso Vending Proprietorship, he purchased for the proprietorship, using his personal funds, the newer vending machines that largely comprise the Disputed Vending Machines. He raised such personal funds by borrowing money from a financial institution and pledging his personal residence as collateral. However, since sometime in 2005, the Ruidoso Vending Proprietorship has operated the Bishop Tom's Vending Machines and Later-Purchased Vending Machines, to the extent they were in operation. As for the remaining Disputed Vending Machines, the Ruidoso Vending Proprietorship owns and operates them, including the drink machines leased from Coca-Cola.

On September 21, 2005, RVI filed a petition for relief under Chapter 11 of the Bankruptcy Code; and scheduled the Estate of Ray Bishop as having non-contingent, liquidated,

---

[3] Plaintiff did not proffer into evidence copies of the state court documents by which she claims to have obtained judgments against Ruidoso Vending, Inc. and Mr. Mulholland personally. Defendant did not contest these assertions.

[4] Mr. Mulholland's attorney stated in a letter to Ms. Kasuboski's counsel: "[Mulholland] would have been brain dead to keep on buying machines for the corporation in light of the fact that Mrs. Kasuboski held a judgment against the corporation." Plaintiff's Exhibit 2. While such phrasing may lack refinement, the statement seems to aptly describe Mr. Mulholland's state of mind when he purchased the vending machines.

-7-

and undisputed claim in the amount of $102,000, of which $100,000 was scheduled as secured.[5] The Estate of Ray Bishop filed motions for relief from the stay and for adequate protection, but neither was resolved before the case closed, as it was converted to Chapter 7 and dismissed shortly thereafter.

After dismissal of the converted Chapter 7 case, sometime in 2008, the Estate of Ray Bishop obtained a judgment against Mr. Mulholland personally. A New Mexico state court ruled that Mr. Mulholland was the alter ego of RVI, and personally liable for its debt to the Estate of Ray Bishop.[6] As noted above, on January 4, 2008, RVI filed the Chapter 7 Case in which Ms. Kasuboski purchased assets from the Trustee. The Court finds that Mr. Mulholland owned the Disputed Vending Machines, and such machines were not property of the RVI bankruptcy estate at the time Ms. Kasuboski purchased the estate's assets from the Trustee.

### *The Mulhollands' Personal Bankruptcy*

On September 8, 2010, Mr. Mulholland and his wife, Patricia Mulholland, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 10-14587-j10. On September 23, 2010, the Estate of Ray Bishop, acting through the Plaintiff here, and Patricia Bishop, filed a complaint objecting to the discharge of the Debtors under 11 U.S.C. § 727(a)(4)(A) (the "Objection to Discharge Action"). The Bankruptcy Code provides that "[t]he Court shall grant the debtor a discharge, unless… the debtor knowingly and fraudulently, in or in

---

[5] Again, the Court makes no findings regarding the amounts owing between the parties.
[6] There is evidence supporting the alter ego finding. Mr. Mulholland kept a RVI business card in several of the Ruidoso Vending Proprietorship's vending machines The Ruidoso Vending Proprietorship used the same telephone number used by RVI. Both RVI and Ruidoso Vending Proprietorship used the same vendor to purchase product – Vistar Corp. When Mr. Mulholland began operating the Ruidoso Vending Proprietorship, Vistar continued to reflect in its records that that its customer was RVI even though the Ruidoso Vending Proprietorship was purchasing the product. *See* Plaintiff's Exhibit 15. This happened despite the fact that Mr. Mulholland informed Vistar that he was no longer buying product for an incorporated business. Verizon Wireless continued to bill RVI for telephone services used by the Ruidoso Vending Proprietorship because Mr. Mulholland failed to notify the telecommunications provider about the change in the customer. Mr. Mulholland also made some installment payments for a 2005 Ford F-350 truck he uses to operate the Ruidoso Vending Proprietorship out of an RVI account.

-8-

connection with the case… made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Based on evidence presented by Ms. Kasuboski in the Objection to Discharge Action, this Court found that the Mulhollands had indeed made a false oath or account on their bankruptcy schedules and in their statement of financial affairs by failing to disclose numerous assets and income. The Court denied the Mulhollands' discharge, thereby denying them a discharge of the claim of the Estate of Ray Bishops, among other claims. *See* Adversary Proceeding No. 10-1154-j, filed before this Court.[7]

In its memorandum opinion denying the Mulhollands' discharge, this Court made findings of fact that included:

- "For his principal occupation, Mark Mulholland operates a vending machine business known as Ruidoso Vending. The Debtors [Mark Mulholland and his wife, Patricia Mulholland] own the business as a sole proprietorship."
- The Debtors owned and operated, and scheduled, thirteen "snack machines."
- The Debtors "owned and operated, as part of the Ruidoso Vending business, five additional candy vending machines, six cigarette vending machines, and twenty one gumball vending machines."
- "[T]he Debtors operated as part of the Ruidoso Vending business at least fifty Coca-Cola vending machines that they rent as lessees on a month-to-month basis."

2011 WL 4352293 at 1. In other words, the Court denied the Mulhollands a discharge based in part on a failure to list Disputed Vending Machines in their bankruptcy schedules as their personal assets. The only two witnesses who testified at that trial were Ms. Kasuboski and Mr.

---

[7] In the instant adversary proceeding, the Court, on the parties' stipulation, took judicial notice of all of the documents filed of record and evidence admitted in Adversary Proceeding No. 10-1154-j.

Mulholland, the same two parties who testified at the trial in the adversary proceeding now before the Court. The Plaintiff in both trials proffered a number of the same exhibits.[8]

**DISCUSSION**

Ms. Kasuboski asserts that she purchased "all of the assets" of the RVI bankruptcy estate at a bankruptcy auction and that those assets included the Disputed Vending Machines, but Mr. Mulholland wrongfully has failed to turn those assets over to her. Mr. Mulholland contends that he has made the assets of RVI available to Ms. Kasuboski. To succeed in her claims, Ms. Kasuboski must prove by a preponderance of the evidence that the Disputed Vending Machines were the property of the RVI bankruptcy estate at the time of the auction or that Mr. Mulholland wrongfully has failed to tender to her other vending machines that were property of the RVI bankruptcy estate.[9]

The Court has found that the Disputed Vending Machines, to the extent that they are not cross-listed on Trial Exhibit 1,[10] were not property of the RVI bankruptcy estate at the time of the auction. Therefore, Ms. Kasuboski did not purchase those vending machines from the Trustee, and Mr. Mulholland has no obligation to turn those vending machines over to her as the successful bidder at the auction.[11]

---

[8] Mr. Mulholland did not plead or argue collateral estoppel in the adversary proceeding now before the Court. Therefore, the Court does not base its decision on collateral estoppel. However, the Court does note that the parties in *this* action are the either the same as the parties in the Objection to Discharge Action or *in privity with* those parties. *See Hanover Packard Group, LLC v. Blackwell*, 2010 WL 3037583 (Bankr.D.N.M. J. Jacobvitz 2010) regarding application of the collateral estoppel doctrine.

[9] "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" *Grogan v. Garner*, 498 U.S. 279 (1991), quoting *Herman & MacLean v. Huddleston*, 459 U. S. 375, 389-390 (1983), citing *Addington v. Texas*, 441 U. S. 418, 423 (1979).

[10] Exhibit 1 lists the Bishop Tom's Vending Machines and Later Purchased Machines.

[11] The Court notes that Ms. Kasuboski does not find herself without recourse with respect to the Disputed Vending Machines. As personal representative of the Estate of Ray Bishop, which holds a non-dischargeable judgment against Mr. Mulholland, she is not precluded by this bankruptcy case from exercising her state law remedies to collect that judgment.

The Court has found that the Bishop Tom's Vending Machines and the Later Purchased Machines that were then in Mr. Mulholland's or RVI's possession, custody, or control were property of the RVI bankruptcy estate at the time of the auction. Therefore, Ms. Kasuboski did purchase those machines. Most of those vending machines are located in a pasture near Mr. Mulholland's residence. Mr. Mulholland tendered the vending machines in the pasture to Ms. Kasuboski, *see* Trial Exhibit 1, but she refused to pick them up because they are, in her opinion, worthless junk. She has no interest in taking possession of those vending machines. The Court finds that Ms. Kasuboski has abandoned any right to the vending machines located in the pasture as of the date of the trial. One court recently explained the common law doctrine of abandonment as it applies to personal property in the absence of an applicable statute governing abandonment:

> Abandonment of property requires a showing of actual acts demonstrating relinquishment of ownership accompanied by an intention to abandon. "Abandonment is always voluntary and involves a positive intention to part with ownership. The doctrine of abandonment has no application unless there is a total desertion by the owner without being pressed by any necessity, duty, or utility to himself, but simply because he no longer desires to possess the thing and willingly abandons it to whoever wishes to possess it…. Intent is a question of fact."

Klenner v. M/Y El Presidente, 2012 WL 3150050 at *8 (S.D.Fla. 2012), citing Bobo v. Vanguard Bank & Trust Co., Inc., 512 So. 2d 246, 247 (Fla. 1st DCA 1987), quoting Katsaris v. U.S., 684 F.2d 758, 762 (11th Cir. 1982). Here, Ms. Kasuboski engaged in acts demonstrating that she voluntarily relinquished ownership of the vending machines located in the pasture. Neither she nor her attorney has contacted Mr. Mulholland to pick the machines up, despite having years in which to do so. Ms. Kasuboski decided not to pick the machines up because they are, in her words, "junk." This was a voluntary action on her part; there was no evidence of any

intimidation or coercion by Mr. Mulholland or anyone else.  Ms. Kasuboski drove past the pasture many times over the past few years and "grew up" in the vending business.  She has the knowledge and wherewithal to pick up those vending machines, but decided not to take possession, despite ample opportunity to do so.  As such, this Court finds that Ms. Kasuboski has abandoned the vending machines that she purchased located in the pasture at the time of trial.  Mr. Mulholland has no remaining obligation to turn those vending machines in the pasture over to the Plaintiff as the successful bidder at the auction.  He may do as he pleases with those particular vending machines.

    Mr. Mulholland should tender to Ms. Kasuboski all keys in his possession, custody or control to the five Bishop Tom's Vending Machines which are still on location, to the extent those machines still exist and are on location, regardless of their servicing status, and should not interfere with Ms. Kasuboski taking possession of those machines.  Additionally, to the extent that Mr. Mulholland has possession, custody, or control of any other Bishop Tom's Vending Machine or Later Purchased Machine not located in the pasture, he should tender any keys to those machines in his possession, custody, or control to Ms. Kasuboski.

    A judgment consistent with this memorandum opinion will be entered forthwith.

_____
Robert H. Jacobvitz
U.S. Bankruptcy Judge

Date entered: 8/16/12

COPY TO:

<u>Plaintiff's Counsel</u>
Richard A Hawthorne
1221 Mechem Dr Ste 2
Ruidoso, NM 88345-7224

<u>Defendants' Counsel</u>
Charles E Hawthorne
900 Sudderth Dr
Ruidoso, NM 88345-7224

<u>Defendant</u>
Michael Mark Mulholland
PO Box 14
Alto, NM 88312

-13-

Case 11-01166-j    Doc 13    Filed 08/16/12    Entered 08/16/12 10:15:40 Page 13 of 13